## Thoma & Blandy's Estate.    Appeal of Brown *et al.*

1. A fund in court arising from a sheriff's sale was referred to an auditor for distribution to report at the next term; his report was ready for filing, when on application of creditors whose claims had been rejected, the time for reporting was extended. Further testimony was taken generally, on which the auditor made a report different from the first. *Held,* that by the reference back, the whole case was re-opened and all the parties were bound to take notice of it.

2. A furnace on a new plan was built, its air and water-pipes were laid, but the connections not made ; the furnace was put into operation, worked for a time and then blown out on account of defect in its plan and construction. Money was then raised on a mortgage by which all the mechanics'

[Thoma & Blandy's Estate.]

claims then due except one, were paid.   Other work was done, altering the construction, building new kilns, &c.   *Held*, that under the circumstances in the case, the building was finished at the date of the mortgage and the liens for work after that time were postponed to the mortgage.

3. The lien for the unpaid claim was not entered for more than six months after the first completion of the furnace.   At the hearings before the auditor and the court below, it was treated as a lien subsisting before the mortgage and as such was allowed in the distribution ; no exception was taken to its allowance.   The Supreme Court treated it as a subsisting lien at the sheriff's sale and prior to the mortgage, and *held*, that the sheriff's sale therefore divested the mortgage.

March 17th 1874.   Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.   WILLIAMS, J., at Nisi Prius.

Appeal from the Court of Common Pleas of *Lehigh county*: No. 325, to January Term 1874.

The proceedings in this case were upon the distribution of the proceeds of the sheriff's sale of the real estate of Alois Thoma and Graham Blandy.

George W. Brown obtained judgment December 6th 1872, for $1666.90 against the defendants Thoma and Blandy on a scire facias on a mechanics' lien.   Under a levari facias on this judgment the defendants' real estate was sold by the sheriff on the 21st of February 1873 for $8600 to W. F. Biddle, who was a mortgagee of the property sold.   Of the purchase-money the sheriff paid into court the sum of $8300.

On the 19th of April 1873, E. J. More, Esq., was appointed auditor to report distribution.

The contest in the case was between W. F. Biddle mortgagee and the claimants under mechanics' liens.

The auditor reported, that he sat on the 21st of May 1873 for the purpose of hearing the several claimants ; that he had several hearings, and that on the 25th of October "the testimony was considered concluded," that the report was ready for filing at November court 1873.

On the 8th of November 1873, on the application of McHose & Ritter and M. C. Fetter, mechanics' lien creditors, the court extended the time for the auditor to make his report.

On the 9th of December 1873, McHose & Ritter and M. C. Fetter produced Walter P. Huber, J. W. Reichard and Marcus C. Fetter to prove the claims of McHose & Ritter and M. C. Fetter ; Biddle the mortgage-creditor produced D. U. Marsteller as a general witness in the case ; with his examination the testimony was closed.

The facts as they appeared before the case was referred back to the auditor were as follows :—

" In August or September 1870, Alois Thoma and Graham F. Blandy, associated together as Thoma & Blandy, commenced the erection of an iron furnace in West Bethlehem, Lehigh county.

[Thoma & Blandy's Estate.]

This furnace was distinguished from other iron furnaces erected in this country, by being supplied with a contrivance by which the raw ore was to be subjected to a heating or baking process before smelting it.   The object of this heating or baking process seems to have been to free it from impurities, thereby improving the quality of the iron to be produced from it.

"So far as the manufacture of iron is concerned, this furnace has proved a failure, and is now standing idle.

"The materials for the construction of it appear to have been furnished by Francis E. Luckenbach, George W. Brown, Borhek, Knauss & Miksch, McHose & Ritter, Bernard E. Lehman, Abbott & Bro., Charles F. Beckel, Cole & Heilman and Marcus C. Fetter. These material-men furnished materials for the construction of the furnace from the commencement until the end, with the exception of G. W. Brown, who commenced work on machinery he furnished, on October 13th 1871, and he commenced shipping his goods in January, A. D. 1872.   Thoma, one of the partners, seems to have been the principal manager and superintendent of the works until some time prior to August 1st 1871, when John F. Blandy, a brother of Graham F. Blandy, by virtue of a power of attorney became the attorney in fact for his brother, and assumed concurrent authority, and took an active part in the management of the works.   At the time that John F. Blandy became connected with these works, which was about August 1st 1871, they had progressed so far as Thoma seems to have had designed them, though upon a trial they would not work.   At this time, also, there was considerable indebtedness on the part of Thoma & Blandy for labor and materials furnished in the construction of the furnace, and Thoma & Blandy executed a mortgage upon these works in favor of Wm. F. Biddle, bearing date August 1st 1871, for $15,000.   This mortgage was entered in the office for recording of deeds in the county of Lehigh, on the 2d day of August 1871.   This is the only mortgage on record.   A large number of judgments and transcripts from justices' dockets were entered against Thoma & Blandy, in the Court of Common Pleas of Lehigh county, but not until after June 1872.   The $15,000 realized from the mortgage were paid into the hands of John F. Blandy, and by him applied to the payment of the claims for labor and materials furnished to Thoma & Blandy in the construction of this furnace, which were contracted at the date of the mortgage.   These debts were all paid by John F. Blandy, with the exception of $67.51 due Charles F. Beckel for materials furnished prior to that time.   This is the only claim which the auditor can discover which remained unpaid at the time the mortgage spoken of was entered of record.

"The contestants for the funds in court are the mortgagees on the one hand, who claim as holding the first lien, and the mechanics' lien holders, who claim to be prior to the lien of the

mortgage by virtue of the Act of Assembly relating to mechanics' liens. The mechanics' claims appear to be filed in the following order: F. E. Luckenbach, for $264.94, filed June 4th 1872, for sheet-iron and pipe, furnished between September 29th 1871 and May 10th 1872; George W. Brown, for $1628.76, filed July 17th 1872, for machinery furnished from January 3d 1872 to March 23d 1872; Borhek, Knauss & Miksch, for $313.03, filed September 19th 1872, for lumber furnished from October 19th 1871 to April 24th 1872; McHose & Ritter's claim, for $394.02, for fire-clay brick furnished from May 8th 1872 to May 10th 1872; Bernard E. Lehman, for $601.67, for materials furnished·from
to　.　　; Abbott & Bro., filed October 12th 1872, for $1263.44, for materials furnished from November 30th 1871 to May 31st 1872; Charles F. Beckel, filed October 19th 1872, for balance of $476.77, for material furnished from March 13th 1871 to May 18th 1872; Marcus C. Fetter, for $54.68, for cartage, &c., furnished from　　　　to　　　　; Cole & Heilman, for $650.78, filed November 21st 1872, for goods furnished from January 6th 1872 to May 16th 1872. The materials claimed to have been furnished by the above-named claimants, as well as the cartage of M. C. Fetter, were furnished subsequent to August 2d 1872, with the exception of the claim of C. F. Beckel, whose unpaid claim, to the amount of $67.51, was furnished before the mortgage was put on record. This is a general history of this case. The mechanics' liens claimants ask to have the several amounts due upon their respective claims distributed to them out of the fund in court. On the other hand, the mortgagees claim the fund in court, on the ground that the mechanics' liens do not take priority of the mortgage, because the work and materials alleged to have been done and furnished, did not go to the original construction of the furnace, but went to mere repairs and alterations. It is not denied that the work was done and materials furnished which are mentioned in the several claims.

"It is specifically objected to the allowance of these mechanics' claims, that the work and materials mentioned in them were all done and furnished after August 2d 1872, which was after the furnace had been completed according to its original design, and were used in repairing and altering the original works, and therefore the liens do not relate back to the commencement of the original building.　　　*　　　　*　　·　　*

"The testimony produced before the auditor, refers chiefly to the inquiry as to whether this furnace was completed at the time of the execution of the mortgage; and whether what was afterwards done, was merely repairs, alterations or enlargements of the original works. John F. Blandy took charge of the works on August 1st 1871. At that time he says he found the works all complete, with,

26 P. F. Smith—3

[Thoma & Blandy's Estate.]

the exception of the air and water pipe connections.   The air and water pipes had been laid at that time, but the connections with the furnace had not been made.   Mr. Blandy had also found that the machine for blowing was not of sufficient capacity for the work required of it.   The water supply was also not sufficient, and an additional kiln was required to keep the furnace in constant operation.   A water-tank was also required to supply a sufficient quantity of water.   In ascertaining the fact whether this was a completed furnace on the 1st of August 1871, the auditor must have recourse to the very meager testimony which was offered upon the subject previous to the reference back for further proof.   Was this furnace supplied with all the appliances which a furnace of .this kind is required to have, on or before August of 1871 ?   It appears that before Mr. Blandy took charge of the works, an attempt had been made to blow in the furnace, which failed, because, as he says, the engine broke and the brick lining of the furnace was burnt through.   It must be admitted that the attempt to blow in the furnace is some evidence that the projectors or superintendent must have considered it completed.   It is true that other machinery was considered necessary by Mr. Blandy, yet even with this, the furnace proved a failure.   If the furnace cannot be said to be finished, until it can be put in successful operation, then this furnace is not completed to-day.   Looking at this case, however, in the light of the testimony produced, before the case was first closed, the auditor concludes that this furnace was not fully completed on the 1st of August 1871, and in accordance with this finding the distribution previously made is not disturbed.

" The claim of Cole & Heilman is for a water-tank, an iron wagon, and some smaller items of labor and materials incidentally connected with these articles.   It is alleged that the materials mentioned in this claim were furnished under a special contract, and this fact is relied on by counsel, to overcome the objection to it, that it was not filed within the period required by the Act of Assembly relating to mechanics' claims.   It is further alleged that the materials so furnished in pursuance of this contract are not all furnished, and that other work was done in pursuance of it not mentioned in the claim.   The only testimony offered in support of this allegation is that of Mr. Cole, one of the claimants.   He says : ' We had a special contract and Thoma made the drawings ; they did the ordering and sent me the drawings, and I did the work ; in making an estimate of the charge, I took into consideration the amount of the work be done for the furnace ; I made a water-tank ; a furnace cannot be run without a water-tank or reservoir ; the work is not all done yet ; they never gave me orders to finish ; it never was a completed furnace ; my claim is not paid ; the furnace was never completed.' This is all the testimony relating to the alleged contract between

[Thoma & Blandy's Estate.]

Cole & Heilman and Thoma & Blandy. The claim does not refer to any contract, as it need not do. The bill of items attached to the claim is a current account of the materials furnished, and work done, with the dates showing when the same were furnished and done, as well as the prices at which the same were delivered and done. It will thus be seen that it does not appear what the terms of the contract were, when it was to be performed, or what was to be done. If the contract was that Cole & Heilman were to furnish certain machinery in a given time, it is probable that the claimant would have six months from the day upon which his contract was to be ended, to file his claim. In the case of a contract for the erection of a building the claimant would have six months after the completion of the same within which to file his claim. Now the contract of Cole & Heilman was not to construct the furnace, but, if anything, it was a contract to furnish machinery to it. The completion of this contract is in no wise connected with or dependent upon the completion of the building: it stands entirely by itself, and in ascertaining the time within which the claimant under it has to file his lien, we are to look only to its terms.     *          *          *

" The Act of 14th March 1855 declares that whenever the items of a mechanic or material-man's bill for work done or materials furnished *continuously* toward the erection of a new building, are in any part bonâ fide within six months before the claim therefor, the lien shall be valid for the whole. * * * It follows therefore that in the case of a special contract to furnish materials or labor, to the construction of a new building, the mechanic or material-man in order to continue his lien must file his claim within six months from the last thing done or furnished. The last article in the bill of Cole & Heilman was furnished on the 16th of May 1872, and the claim was not filed until the 21st of November 1872, which was more than six months after the last article was furnished. It is however argued that the whole of the contract is not yet completed. As already stated the terms of this alleged contract are not made to appear, when it or under what circumstances it was to be completed or what beyond the items in the claimants' bill are still wanting to complete it. Upon these most material points there is no testimony. Under these circumstances the auditor has come to the conclusion that the claim of Cole & Heilman was not filed within the period fixed by the Act of Assembly to constitute a lien upon these premises.

" The claims of McHose & Ritter and M. C. Fetter were proved before the auditor, after the former report had been made out and prepared for filing.

" The testimony which has been offered for and against these two claims, is of a character that would in the opinion of the auditor very materially affect the whole case. It is maintained by the

[Thoma & Blandy's Estate.]

counsel representing the claims which were passed upon and allowed before this testimony was produced, that as the case was referred back to the auditor in order that the claims of McHose & Ritter and M. C. Fetter might be proved, this new testimony does not affect them.   On the other hand the counsel concerned for the mortgagee insists that the time for filing was merely enlarged and that testimony relates to the whole case.   In this conjuncture the auditor has decided to treat this last testimony as if it applied merely to the claims of McHose & Ritter and M. C. Fetter.

" The claim of McHose & Ritter is for fire-clay brick furnished from May 8th to 10th of 1872.   John W. Reichard, a furnace builder, used one-half of these bricks in relining the furnace-stack which had been burnt through, and the other half he used in the additional kiln that was put up.   This witness testifies that the furnace was up and in blast before John F. Blandy came there, the furnace buildings were all up and the machinery was all in that is there now, and everything was there except the roasting-kiln. The furnace had been in operation and was blowed out before John F. Blandy came there.   ' What was done after John F. Blandy came there was repairing and building that other kiln.'   And again, ' The furnace had been in operation before I came there, and what I did was repairing.'   This witness further says that when he said the furnace was not finished he meant that the machinery was too weak, and that it wanted a water-tank, ' the manner of supplying the water was not sufficient.'

" David U. Marsteller, a witness, says he had charge of this furnace from the beginning to the end of the work, and that he was there all the time, and when John F. Blandy came there in August 1871.   This witness further proves that the furnace was put in blast in February or March 1871, and that it was run about six weeks.

" Mr. Thoma made the draughts and plan for this furnace, and this witness says that according to these draughts and plan the furnace was finished before April 1871, with the exception of the water-pipes, &c.   Witness says, I considered the furnace finished when John F. Blandy came there.   It thus appears that this furnace was put in blast in February or March 1871, and that they ' ran it ' about six weeks.   Now these bricks were not furnished until May 1872, more than a year afterwards, and as to one-half of them there can be no dispute that they were used to repair the furnace-stack by putting a new lining in place of the old one which had been rendered useless by being burnt through or by the chilling of the stack, and this at a period of more than one year after the person having charge of the building of the furnace says it was completed.   As to the additional kiln put up the testimony of these witnesses agrees in saying that it was intended to give a greater capacity for baking ore, than the furnace possessed before.

[Thoma & Blandy's Estate.]

"After full and deliberate consideration of this testimony in connection with all the facts of this case, the auditor is of the opinion that the materials named in this claim did not enter into the construction of this furnace, but were used for the purpose of repairing and additions. The argument has been made that with the machinery and appointments it was supplied with when it was first blown in, it would not work, and that other and stronger machinery was found necessary, but it is plain that even with the new machinery the furnace cannot be worked and is apparently abandoned. Can it be supposed that if the owners were now to pay all the claims against it, and give a new mortgage, and then proceed to put in other machinery, that mechanics' liens therefor would take priority of the mortgage? And yet it could be shown that the furnace with its present appliances would not work, just as it would not work with the machinery with which it was supplied when Marsteller declared it completed before. The same remarks apply to the claim of M. C. Fetter, with the exception that that claim does not clearly appear to be a proper subject of a mechanics' lien claim.

"Entertaining these views upon the facts, the auditor considers it proper that these liens should not have priority of the lien of the mortgage, and that therefore they should not be paid out of the fund in court.

"If the testimony of Marsteller and Reichard had been produced before me before the distribution had been made in the first instance, it is probable that none of the mechanics' lien claims, with the exception perhaps of Mr. Beckel's, would have been allowed. A portion of Mr. Beckel's claim is prior to the date of the mortgage. If it were not for this fact the sheriff's sale would not divest the lien of the mortgage at all, for otherwise the mortgage would have been the first lien.

"Under all the circumstances, the auditor deems it proper to report two distributions, one in accordance with the facts as they appeared before Marsteller and Reichard were examined, and the other in accordance with the facts as they now present themselves, so that if the court should be of opinion that this later testimony does or does not apply to the whole case, they can adopt either one or the other, and thus obviate a reference back to the auditor, as to them may seem proper."

By the first distribution the auditor awarded to the mechanics' lien creditors the amount of their claims, and $3287.31, the remainder of the fund in court, to W. F. Biddle, the mortgagee. By the second distribution he awarded $398.22 to Charles F. Beckel, a mechanics' lien creditor, whose lien preceded the mortgage, and to W. F. Biddle $7532.73, the balance of the fund, after deducting expenses, &c.

The findings of facts by the auditor having been approved by

[Thoma & Blandy's Estate.]

the court below, and the Supreme Court having taken his findings as conclusive, none of the evidence taken before the auditor has been given.

Exceptions to the report were filed by Biddle, the mortgagee, amongst others, that the auditor had allowed Beckel's whole claim, when he should have allowed but $67.51.

The lien-creditors whose claims were disallowed by the auditor's second distribution, filed exceptions, viz. :—

1. The testimony of Reichard and Marsteller, submitted after the adjudication of the claims of Brown, Lehman, Abbott & Bro., Luckenbach, Borhek, Knauss & Miksch, Beckel, and Cole & Heilman, does not apply to them or any one of them.

2. The report of the auditor upon the claims of Brown, Lehman, Abbott & Bro., Luckenbach, Borhek, Knauss & Miksch, Beckel, and Cole & Heilman, which was "made out and ready for filing," was final, so far as their claims were concerned.

3. The auditor erred and did a gross injustice to the mechanics' lien claimants in not filing his first report as it "had been made out and prepared for filing" before the testimony of Reichard and Marsteller was submitted before him, but rewriting it *after* that testimony was submitted, and thus rewritten, filing it.

4. The auditor erred, in not filing his report as it "was ready for filing during the sitting of the court in November" last.

12. In not awarding to the mechanics' lien creditors the amount of their claims respectively.

The other exceptions related to the findings of facts.

Exceptions were filed by other parties to the report, covering substantially the same grounds, and also other grounds not involved in the decision by the Supreme Court.

The following are extracts from the opinion of Longaker, P. J., delivered in deciding upon the exceptions :—

* * * "The leading exception is to the finding of fact by the commissioner, that the work done and materials furnished were subsequent to the completion of the works and buildings, except as to the claim of C. F. Beckel. Bearing upon this question it is found that the commissioner cuts the testimony in two, and considers one series of it as regards all the claims, except as to McHose & Ritter's, and as to this latter claim applies the whole testimony. The reason assigned for it is that the testimony was considered closed, and a report consummated which rejected the claim of McHose & Ritter, as well as the claim of the mortgagees; but subsequently, on the application of McHose & Ritter, the time for filing the report was extended and new testimony then admitted.

"This extension of time was made by an order of court, dated November 8th 1873 ; a reference to it will show that no limitation was then made as to the nature and character of the testimony to

[Thoma & Blandy's Estate.]

be thereafter taken, nor as regards its application after it should be obtained. No such order having been made, all that is material to an intelligent adjudication should be admitted. The proceedings before auditors, masters and commissioners are conducted usually with great liberality. The history of this case forms no exception to the general practice, but develops a most liberal and accommodating spirit towards all the claimants. Even if the testimony had been treated as closed, prior to the extension of November 8th 1873, there is no good reason assigned why it should not be opened so as to let in all testimony which may be relevant to the whole case. * * * There can be invoked no legal principle to exclude the testimony from operating upon all the claims, and much less is there any merit in the objections by these claimants, based as it is upon a mere technicality at best. The whole testimony must therefore be considered as applicable to all the claims.

"The question then recurs, shall the finding of the commissioner be reversed as regards the completion of the original design of these structures prior to the time of the execution of the mortgage—the 1st day of August, A. D. 1871? To disturb this finding it should be made to appear that it is founded upon mistake, or that it is so clearly against the weight of the evidence as not to warrant such a conclusion."

The court then discussed the evidence in the case, and proceeded:—

"Marsteller says he was there from the beginning, and that he considered the furnace finished when John F. Blandy came there. But a reiteration of this testimony in detail is not necessary; the commissioner has found the fact of a completion substantially before the execution of the mortgage, and in this finding has our concurrence. It therefore follows that the distribution of the commissioner awarding this fund to the Beckel claim, and the balance to the mortgagees, must be confirmed."

The mechanics' lien creditors, to whom none of the fund was awarded, appealed to the Supreme Court and assigned the following errors:—

1. The court erred in distributing the fund in court to the mortgagee, William F. Biddle.

2. The court erred in not distributing to the mechanics' lien holders, to wit: B. E. Lehman, Abbott & Bro., G. W. Brown, Borhek, Knauss & Miksch, F. E. Luckenbach, C. F. Beckel, McHose & Ritter, and M. C. Fetter.

3. The court erred in confirming and adopting auditor's distribution No. 2, in so far as it gives the fund to the mortgagee.

4. The court erred in not confirming auditor's distribution No. 1.

5. The court erred in finding as a fact that the iron-works were completed in August 1st 1871.

*W. D. Luckenbach, D. D. Roper, E. Albright* and *R. E. Wright & Son,* for appellants.

*H. Green* and *J. D. Stiles,* for appellee.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 11th 1874.

As to the main questions in these appeals—which is one·of fact merely—according to the well-settled principles upon which this court has always acted, we must consider the finding of the auditor upon all the evidence—after the second reference to him—to be conclusive, unless very plain mistake is shown. More particularly must that be so when his finding in that respect has been approved by the court below. We agree with the learned judge, that upon the reference back to the auditor, the whole case was necessarily reopened, and all parties before the auditor were bound to take notice of it. It would present a very strange anomaly if, as to some claimants upon a fund, a fact should be found one way, and in regard to other claimants on the same fund there should be a contrary finding, and a distribution awarded to some and denied to others, according to this double result, when it is manifest that in law and equity all stand upon the same platform. We hold, then, that the furnace in question was finished on the 1st of August 1871, when the mortgage of the premises to William F. Biddle was executed and recorded the next day. It is true that the weight of the evidence seems to be that the air and water-connections were not then made, though the pipes were all laid ready for the connection. Yet on the other hand the testimony of Reichard, who laid the fire brick in the furnace in May 1872, —and it is not easy to see how he could be mistaken—is very positive and distinct. · "The furnace had been in operation and was blowed out before John F. Blandy came there; what was done after John F. Blandy was repairing and building that other kiln; the furnace had been in operation before I came there, and what I did was repairing; furnaces do sometimes chill when they are first started and require to be repaired." It is not a point in dispute that John F. Blandy did take charge of the work on the 1st of August 1871, the date of the execution of the mortgage. Indeed, it can hardly be disputed that the furnace was started and run a short time before that day. The only contention is that it was for an experiment with the roasting kiln and not for the purpose of making iron. In either event we think the auditor and court below justified in coming to the conclusion, that the furnace was then finished according to its original plan, though that may have been defective, and repairs and alterations were afterwards made in order to remedy the defect.

Thus far upon the exceptions in the court below and the assign-

ments of error in this court, nothing would remain but to affirm the decree and dismiss the appeals. But a point has been very ingeniously started here by the able counsel of the appellants, which requires to be noticed. It relates to the finding, both by the auditor and the court, of the existence of the lien of Charles F. Beckel. It is clear that though when the mortgage was executed, Beckel had a claim to the extent of $67.51 for work and materials then done, and which was left unpaid; yet if the furnace was finished August 1st 1871, since his claim was not filed until October 1872, at the time of the sheriff's sale, upon the judgment of the claimant, Brown, he had no lien. The logical consequence follows, that the mortgage being then the first lien, the sale would be subject to the mortgage, and the mortgagee have no right to come on the fund. Hence it is argued, the contention by the mortgagee, that the furnace was finished August 1st 1871, is *felo de se*. It shows that he has no standing in court, and his objection to the award of the money, or any part of it, to the mechanics, ought to be disregarded as coming from an entire stranger. But it is to be remarked that no objection or exception in the court below appears to the claim of Beckel as a lien prior to August 1871. The mortgagee indeed did except, but only to so much as was for work done subsequently. His appeal to this court has been withdrawn. There was good reason for this course. As we have seen, an objection to Beckel's claim by the mortgagee would have been fatal to his right to come on the fund. In like manner an objection by the mechanics, if successful, would have been equally fatal to them, for if Beckel had no lien on the ground that the furnace was finished August 1871, so neither had any of them. What then is the consequence as far as our duty to the cause is concerned? Without exception and without assignment of error here we are bound to regard the claim of Beckel as a valid subsisting lien, which was so at the time of the sheriff's sale. We are not called upon to take notice of the fact that it was not filed until October 1872. No injustice is done by the decree. The furnace was to all outward appearance finished. The mortgagee advanced his money in good faith to pay off all existing mechanics' claims. The money was so applied except as to this small amount due to Beckel, which seems to have been overlooked by mistake. The work subsequently done was evidently in the nature of mere alterations and repairs; though undoubtedly if the furnace had not been before finished, they would, within the principle of Norris's Appeal, 6 Casey 122, be entitled to be considered as a part of the original erection and to relate back to the date of its commencement.

> Decree affirmed, and appeals dismissed at the costs of the appellants.