Charles Collum and James D. Knouse, trading as the Allentown Boiler Works *v.* The Pennsylvania Paint and Ochre Co. Appeal of Lehigh Valley Trust and Safe Deposit Company, Assignee of Robert F. Wentz.

*Mechanic's lien—Original construction—Additions and alterations—Finding by the court.*

A factory was erected to manufacture paint in a particular way. Soon after the completion of the construction of the building, it was found that the method of manufacture contemplated was not feasible, and it was determined to use other appliances. In pursuance of the change in the plans, an additional building was erected. One of the contractors of the original building furnished the work and materials for the new building, and filed a lien therefor. *Held*, that it was proper for the court below to find that the work and materials furnished after the completion of the original building should be regarded as having been furnished for additions and alterations.

It seems that the Act of May 18, 1887, P. L. 118, relating to mechanics' liens, applies to all liens for repairs, alterations or additions in all parts of the state, and therefore supplies all previous legislation on that subject.

Argued Feb. 1, 1898. Appeal, No. 263, Jan. T., 1897, by the Lehigh Valley Trust and Safe Deposit Company, from decree of C. P. Lehigh Co., Jan. T., 1894, No. 3, sustaining exceptions to auditor's report. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ. Affirmed.

Exceptions to the report of J. G. Diffenderfer, auditor, to distribute the money realized from the sheriff's sale of defendant's real estate.

The auditor found the following facts :

1. On February 18, 1895, the sheriff of Lehigh county sold the property of the defendant company to Robert E. Wright, Esq., for the sum of $3,025, and so returned to court. On April 26, 1895, on motion of C. R. James, Esq., attorney for Robert F. Wentz, trading as Siegfried Manufacturing Company, who held a mechanic's claim against certain of the property sold, alleged to be payable out of the fund realized, the court granted a rule on the sheriff to show cause why the fund should not be paid into court; whereupon counsel representing all the parties who have any standing in this distribution, to wit: May 4, 1895, filed

in the prothonotary's office an agreement by the terms of which $1,700 was paid into court, with guaranty that the balance realized upon the execution, can be taken as likewise in court for the purposes of this inquiry.

2. The corporation defendant was insolvent at the time of the sheriff's sale, as abundantly appeared by claims of record not reached in this distribution. The property sold consisted of the leases, leaseholds and franchises, fixtures, machinery, apparatus and improvements of the defendant company, and the distribution of the proceeds had to be according to priority of lien, out of the entire fund.

3. The Pennsylvania Paint and Ochre Company was chartered at Harrisburg, August 2, 1892, for the purpose of manufacturing paint of all kinds out of material mined and quarried by this corporation, and various admixtures thereof and additions thereto. The property owned by the corporation and sold by the sheriff was such as was adapted to the purposes of the incorporation.

4. The claimants to the fund before the auditor were the plaintiff in the execution, the bondholders of the company, certain mechanic's lien creditors, and the Times Publishing Co., an execution creditor.

5. The bondholders base their claim upon a mortgage given by the company to Fred H. Lichtenwalner, trustee for the said bondholders, in the amount of $35,000, with interest, dated August 1, 1893, and entered of record August 10, 1893, in the recorder's office at Allentown, in mortgage book, vol. 66, page 133, etc. The validity of this mortgage was not in any manner successfully impeached, and upon its entry of record it became a lien on the property of the defendant company seized and taken in execution by the sheriff, as aforesaid.

6. The mechanic's lien creditors were Robert E. Wright, Esq., assignee of mechanic's lien No. 4132, in said court, in the amount of $1,031.31, and Robert F. Wentz, who filed two liens in said court, Nos. 4187 and 4188, for a single claim, each being in the full amount of the single claim, with the apparent intention of a surer compliance with the provisions of the acts of assembly in such case made and provided. Mr. Wentz's claim was $1,528.05, as of the time it was filed. The validity of Wright's claim was not contested.

Both claims were for labor and material done and furnished to the paint mill plant, located in South Allentown, Salisbury township, Lehigh county, on a leasehold created by lease from Louisa Tritchler, executrix, to William B. Shaffer, dated November 26, 1892, for the tract of land described in said liens. The lease was entered of record in the proper recorder's office, November 28, 1892, and was subsequently, to wit: May 8, 1893, assigned by William B. Shaffer to the Pennsylvania Paint and Ochre Company, and the assignment recorded on May 23, 1893. William B. Shaffer made a second assignment of the lease to the said company on July 31, 1893, which assignment was recorded with the aforesaid mortgage, August 10, 1893.

8. The claim of Robert F. Wentz was made under the act of 1871, May 16, extending the provisions of the act of June 16, 1836, and its supplements " to all buildings, engines, pumps, machinery, fixtures, and other improvements, erected or put up by tenants of leased estates, on lands of others, in the counties of Lehigh and Northampton, and to all mechanics, machinists and materialmen, doing work, or furnishing the articles or materials therefor: Provided, That the lien hereby created shall extend only to the interest of the tenant or tenants, lessee or lessees, therein, and to the buildings, engines, pumps, machinery, fixtures, and other improvements, erected, repaired or put up by the mechanics, machinists, persons, or material men, entering liens thereon." The claim was contested on the ground, first, that the work and material was in the nature of additions, alterations or repairs, and that for a claim of this character the claim as made under the two liens, or either, did not show that the requirements of the acts of assembly in such case made and provided had been complied with; second, that even though the work and material were not in the nature of additions, alterations or repairs, it must be found that the claim was for new construction, not in the line of the original design, and separated from the earlier work done by the claimant by a well marked period of time, by change of ownership of the mill plant, by the character of the work, and by the progress and condition of the constructions on the ground; and third, that the lien was not filed within six months after the work was finished and the material furnished.

The auditor found that the claim was for machinery, fixtures and other improvements on the Tritchler leasehold; that the

work was done and material furnished in continuance of original construction, and not for additions, alterations or repairs; that the lien was filed within the statutory period, and relates for its commencement to the beginning of the factory constructions, to wit: the early part of December, 1892; that the work and material were furnished upon the credit of the constructions in and about which they were used; that the proceeds of the lien must be distributed to the Lehigh Valley Trust and Safe Deposit Company, the present owner by proper assignment.

9. All other claims upon the fund in hand were postponed to the execution under which this submission was made; because the fund must go, first, to the mechanics' liens, and second, to Fred H. Lichtenwalner, trustee in the mortgage; and owing to the amount of the debt secured by the mortgage there could be no hope for any claimants coming after.

This order of distribution was also substantially agreed upon by the parties in interest before the auditor at the time of the argument.

The auditor distributed the fund to the Lehigh Valley Trust and Safe Deposit Company, assignee of mechanic's claim of Robert F. Wentz, as filed in the court of common pleas of Lehigh county, to wit: mechanics' liens Nos. 4187 and 4188.

The court found as a matter of fact that the claim upon which the Wentz lien was based was for materials and work furnished and done in making additions to and alterations in the building in question and not in the original construction; that the liens created before the commencement of said additions and alterations in October, 1893, being in excess of what the property brought at sheriff's sale, nothing could be awarded to the holder of the Wentz claim, and it sustained exceptions to the auditor's report.

Other facts appear by the opinion of the Supreme Court.

*Errors assigned* were in sustaining exceptions to auditor's report.

*Charles R. James*, with him *James M. Deshler*, for appellant. —The local Act of May 26, 1871, P. L. 1241, is not repealed by Act of June 17, 1887, P. L. 409.

There is sometimes an exception to the general rule that all

mechanics' liens arising at any time whatever during the construction of a building are of equal rank, since they relate to the same commencement: Fordham's App., 78 Pa. 120 ; Hern v. Hopkins, 13 S. & R. 269.

With no change of ownership the building may be separated into two stages for a commencement of liens on account of a " distinct and striking departure from the original design upon which the building was being erected : " Norris's App., 30 Pa. 122; Hoover v. Pennock, 5 Rawle, 307 ; Thoma & Blandy's Est., 76 Pa. 30.

There was no evidence to convict the auditor of error in his findings, and unless there is evidence to convict him of error, his finding is conclusive : Brua's App., 55 Pa. 294 ; Pittsburg's App., 70 Pa. 147; Speakman's App., 71 Pa. 25 ; Harland's Account, 5 Rawle, 323 ; Stehman's App., 5 Pa. 416 ; Bedell's App., 87 Pa. 512.

*R. E. Wright,* for appellee, cited Purvis v. Ross, 158 Pa. 20 ; Smyers v. Beam, 158 Pa. 57 ; Best v. Baumgardner, 122 Pa. 17 ; Groezinger v. Ostheim, 135 Pa. 604 ; German Building Association v. Heebner, 39 W. N. C. 573.

OPINION BY MR. JUSTICE GREEN, April 11, 1898 :

The learned court below made the following finding, viz : " The court finds as a matter of fact that the claim upon which the Wentz lien is based is for materials and work furnished and done in making additions to, and alterations of and in, the building in question, and not in the original construction." This finding brings the case within the decision of this Court in Thoma & Blandy's Est., 76 Pa. 30. The facts in the two cases are very similar in character, so much so that they require similar judicial treatment. In the Thoma case the facts are thus stated in the syllabus : " A furnace on a new plan was built, its air and water pipes were laid, but the connections not made ; the furnace was put into operation, worked for a time and then blown out on account of a defect in its plan and construction. Money was then raised on a mortgage by which all the mechanics' claims then due, but one, were paid. Other work was done altering the construction, building new kilns, etc. Held that under the circumstances of the case the build-

. ing was finished at the date of the mortgage, and the liens for work after that time were postponed to the mortgage." It is therefore very obvious that if the finding of the court below in the present case is correct the decision in the Thoma case controls its determination.

After a very careful examination of the testimony on the present record, we are thoroughly convinced that the finding of the court below on this important question is fully sustained by the evidence. It is not necessary to repeat the testimony here in any great detail. The fund for distribution was the proceeds of one of five manufacturing plants belonging to the Pennsylvania Paint and Ochre Co., four of which were located in Berks county and the remaining one, being the one now in question, was erected in the immediate vicinity of Allentown in the county of Lehigh, and was known as the Allentown Mill. This mill was built on leased ground near a barbed wire mill, and its purpose was to evolve Venetian red paint out of the refuse acid which was discharged from the wire mill. The mill was built by William B. Shaffer, who was president of the Paint and Ochre Co. and was turned over by him to the company when completed, in pursuance of a contract between him and the company. This occurred in June, 1893. The mill was put in operation during that month by the company, and some goods were shipped as early as July 8, 1893. The formal transfer to the company was made on July 31, 1893, and on the next day the mortgage to secure the payment of $35,000 of bonds by the company was made and duly recorded on August 10, 1893. The auditor finds that the validity of this mortgage was not impeached and upon its entry of record it became a lien upon the property in question. The plan of the mill contemplated the production of Venetian red by using the acid at the wire mill under a process never before used, without the use of a dryer before putting it in the roaster. It very soon appeared however that this could not be done, and then the plan of the mill was changed by the company deciding to erect a dryer with other appliances so as to produce brown and other colors of paint. In pursuance of this change in the plans, an additional building was put up on the north side of the mill, and the court below finds that the Wentz lien, the one in controversy, was filed for work and materials furnished by Wentz

in making these additions and alterations, and that all this was done after the completion of the original building. Wentz had also furnished work and materials for the original building, and it was contended that the whole of his claim must be regarded as continuous, and therefore to be treated as a unit ending only with the last items of his bill. The auditor took that view of the claim but the court below did not sustain it, and held that the work and materials furnished after the completion of the building must be regarded as having been furnished for additions and alterations, and on this subject we think the evidence supports the finding of the court and not of the auditor.

In reference to this matter the learned court below, after reviewing the testimony of the various witnesses, says in the opinion: " It is plain that after the mill had been started it was found that it was a failure, and that those controlling it set about changing it. That change was the providing of appliances to dry the manufactured material and to make paints other than Venetian red along with that kind, and to increase the capacity of the establishment. To carry out this intention another building was necessary, and nine grinding machines and connections between the new and what was there before had to be made. These new appliances were additions and alterations, visibly so, and to make them, Wentz contracted and did what was done by him in October, 1893, and after that." We are very clear that this is the true interpretation of the testimony and, therefore, we sustain the findings of the court on this subject.

Some question is raised in the argument for the appellant as to whether the Act of May 18, 1887, P. L. 118, amending the act of 1836, repeals the local Act of May 26, 1871, P. L. 1241, relating to liens on machinery on leased estates in the counties of Lehigh and Northampton. It is only necessary to say that the act of 1887 is manifestly intended to apply to all liens for repairs, alterations or additions in all parts of the state, and therefore supplies all previous legislation on that subject. As there was no pretense that the requirements of this act were complied with in this case, it has no application. The assignments of error are all dismissed.

The decree of the court below is affirmed and the appeal is dismissed at the cost of the appellant.